CARRIE SIMS, by her next friend, v. ROBERT LINDSAY et al.

(Decided May 3, 1898.)

*Action for Damages—Master and Servant—Defective Machinery —Negligence—Contributory Negligence—Question for Jury —Sufficiency of Evidence—Trial.*

1. The burden of proof on an issue as to contributory negligence rests upon the defendant, and, while the Court can hold that a party upon whom rests the burden of proof has failed to offer any evidence to sustain it, it cannot adjudge that he has proved his case, for where there is any evidence the jury alone can pass upon its truth.

2. Where, in the trial of an action for damages for an injury sustained by the plaintiff, an operator in a laundry, by reason of a defective machine at which she worked, the plaintiff testified that she thought the machine was more dangerous than a former one she had used, but that nobody had explained the machine to her, and she did not know a guard was necessary, and that she had to put her fingers close up to the rollers to get the linen in; *Held*, that such evidence did not necessarily prove the plaintiff to be guilty of contributory negligence.

3. An operative, by not declining to work at a machine lacking some of

SIMS *v.* LINDSAY.

the safeguards which she has seen on other similar machines, does not thereby waive all claims for damages from the defective machine unless it be so plainly defective that the employee must be deemed to know of the extra risk.

CIVIL ACTION for damages for an injury caused the plaintiff by the alleged negligence of defendants, and the unsafe and defective condition of a "mangle," at which plaintiff was employed to work, tried before *Timberlake, J.*, and a jury at July, 1897, Special Term of BUNCOMBE Superior Court. The testimony was as follows :

The plaintiff testified : · "I have lived in Asheville for five years. Am 14 years old now, and was 13 when my hand was hurt. I worked at Biltmore one week for defendants, who were operating a steam laundry. They washed and ironed, and did general laundry work. When I went to work there, Morgan said ·he was a partner with Lindsay, and the concern was called Biltmore Steam Laundry. I worked there one week, and got my hand so mashed in the machine as to necessitate the amputation of my fingers on that hand. I was ironing at the time, and it was hurt in the ironer. I suffered a great deal for two months, and was attended by Drs. Crawford and Merriweather. The machine has large rollers, and garments ironed go through these rollers. There was nothing between me and the rollers, nor any guard or protection. The rollers were hot, and one had steam in it. I had worked in the Asheville Steam Laundry before, but the machine there had a guard on it. Worked there a long time. Nobody explained the machine to me, or said anything about its being dangerous, and I did not know the guard was necessary." On cross-examination: "The machine at Biltmore had no guard on it at all. I saw the machine was danger-

ous. I thought it more dangerous than the one at Asheville Laundry, because it had no guard. I didn't know it had ever had a guard." Redirect: "I had to put my fingers up close in order to get linen in."

Dr. Crawford testified: "I was one of the physicians who attended plaintiff and dressed her wounds. She suffered a great deal, and was a long time getting well."

Dr. Merriweather testified: "I heard Mr. Lindsay say that it was the fault in not having the guard there. He said, 'Go ahead and attend the case,' and he would pay it, because the injury was done by his machinery. We told him it would cost $100, in work and drugs, and he said he would pay it; the cause of the accident was due to the guard being off." Cross-examination: "Lindsay said he would pay it because he wanted no trouble over it; indicating he might have trouble. He said the guards were off, and that they should have been on there. He was very anxious about the case." Witness further stated that Lindsay told him after the accident that the guard ought to have been on, but it had been taken off by a colored boy, who said it was in the way. He said it was off the morning the plaintiff went to work.

Clark testified that he had seen the machine at Biltmore, and it had no guard on it.

The father of the plaintiff testified that the plaintiff suffered a great deal. "When I saw the machinery, the guard was on it. Lindsay said that it ought to have been on it at the time of the accident, but that it had been taken off by a colored boy, who said it was in the way. He said he found that it was off the morning plaintiff went to work. Before being hurt, the plaintiff had said nothing about the guard being off."

At the close of the evidence the defendant demurre, under Act of 1897, on the ground that plaintiff's testimony showed she had been guilty of contributory negligence in working at the machine for five days with knowledge of the absence of the guard, and of the dangerous condition of the machinery. The court intimated an opinion that plaintiff could not recover, and she submitted to a non-suit, and appealed.

*Mr. A. S. Barnard* for plaintiff (appellant).
*Mr. H. B. Stevens* for defendants.

CLARK, J.: The plaintiff, who sues by her next friend, was a girl 13 years of age at the time of the injury, whose hand was mashed in the rollers of a mangle in a steam laundry, necessitating the amputation of the fingers of the hand. It was in evidence that the defendant had admitted that the accident was caused by the guard having been taken off, and that he knew it was off that morning when the girl went to work.

At the close of the evidence, the defendant demurred under the Act of 1897, Chapter 109, "on the ground that the plaintiff's testimony showed she had been guilty of contributory negligence in working at the machine for five days, with knowledge of the absence of the guard, and of the dangerous condition of the machinery." The court sustained the demurrer, and in this there was error.

The burden of contributory negligence was on the defendant, and while the court can hold that a party, on whom rests the burden of proof, has failed to offer evidence to sustain it, it cannot adjudge that he has proved his case, for when there is evidence the jury alone can pass upon its truth. *Ice Manufacturing Company* v. *Railroad*, and several other cases at this term.

Besides, the girl's evidence did not prove her guilty of contributory negligence. She said she thought this machine more dangerous than a former one she had worked at which had a guard, but that nobody had explained the machine to her, and she did not know that the guard was necessary, nor that this machine had ever had a guard, and that she had to put her fingers close up to the rollers to get the linen in. It is not to be held as a matter of law that operatives must decline to work at machines which may be lacking in some of the improvements or safeguards they have seen upon other machines, under penalty of losing all claim for damages from defective machinery. It is the employer, not the employee, who should be fixed with knowledge of defective appliances and held liable for injuries resulting from their use. It is only where a machine is so grossly or clearly defective that the employee must know of the extra risk that he can be deemed to have voluntarily and knowingly assumed the risk. Where the line is to be drawn must depend largely upon the circumstances of each case, but they must be such as to show that the employee had full knowledge of the unusual risk and deliberately assumed it. Such a state of facts was not conclusively shown by the plaintiff's evidence in this case. If such inference could be drawn from it, it was in the province of the jury, not of the Court, to draw it.

New trial.