JAMES R. LLOYD v. P. H. HANES & CO.

(Decided April 10, 1900.)

*"Assumption of Risk"—"Knowledge of Danger"—Safety Appliances—Defective Appliances—Negligence of Independent Contractor.*

1. The distinction is wide between mere "knowledge of the danger" and "voluntary assumption of the risk." Assumption of risk is a matter of defense, analogous to contributory negligence, to be passed upon by the jury, who are to say whether the employee voluntarily assumed the risk; it is not enough to show merely that he worked on, knowing the danger.

2. Approved safety appliances, which have come into general use, are to be adopted, and it is negligence in the employer not to furnish them to his employees. This does not require that the latest improved appliances be provided, but only such approved appliances and safeguards as are in general use.

3. It is only where machinery is so grossly or clearly defective that the employee must know of the extra risk, that he can be deemed to have voluntarily and knowingly assumed the risk.

4. As a general rule the negligence of an independent contractor is not chargeable to his employer.

CIVIL ACTION for damages for personal injury alleged to have been occasioned by the negligence of defendant in permitting a saw used in their factory to remain without guard or screen, or safety appliance used on such machinery, to prevent injury to operatives, tried before *Robinson, J.,* at February Term, 1900, of FORSYTH Superior Court.

The defendant denied all negligence on their part, and attributed plaintiff's injury to his own carelessness. The plaintiff was the only witness examined. He testified: "I am forty-two years old, and have been box-maker for ten or twelve years. In 1899 I was working for defendants in their

shops in Winston. The shop is not joined to the tobacco factory, but is in the factory lot, and is operated by steam generated from the main boiler in the factory. They own the machinery in the shop. I got part of my thumb cut off as I was sizing box timber. The saw came out of the table about one inch above the boards of the table. I was pushing the timber when the saw struck a knot, or gave way, and thrust my hand against the saw and cut off part of my thumb. It was an open saw without hood or screen. I had never seen or knew of a screen or hood operated in this manner before I was hurt. I have since seen such protection and hoods, especially in the factory of Bailey Bros. (Hood here introduced and exhibited to the jury.) They make saws less dangerous. If there had been a screen or hood, and the saw had struck a knot or cross grain, it could have thrust my hand on the screen and not on the saw. I was required to size the timber down to a 32d of an inch, which was very careful work. I took particular pains to hold the boxing in place. I can not do the same, or as good work as then. I got $1 per day before I was hurt. I can not get so much now. I can not average over 60 cents per day.

"W. H. Woodward in the shop employed me. I never spoke to Hanes about my employment, and never saw either of the Hanes employ or pay the hands in the several departments. There was a manager in each department in the factory, that employed and paid the hands. The bills for lumber were made out to P. H. Hanes & Co."

Cross-examined, plaintiff testified: That he was employed by W. H. Woodward in the box shop, and paid by him. That he never spoke to the defendants about employment or his work, nor did his name appear upon their time book, but his time was kept by W. H. Woodward, who run the box shop, and paid for his labor. That the running of a saw of this kind

was dangerous, and that he knew it was dangerous. That his hands were cold the day he was hurt, and he knew it was more dangerous when his hands were cold. That at one time, before his injury, he had a contract to make boxes at Brown & Williamson's factory, similar to W. H. Woodward's contract at defendant's factory. That he employed his own labor, paid his own hands, but they furnished the shop and power to run his saws, but had no control over his hands. That he used a saw similar to the one by which he was injured, without a guard. That he is now working at Taylor Bros.' factory, under a contract, and has a man hired to do his re-sawing, and this man uses a saw without a guard similar to the one on which he was hurt. In the tobcaco factories in Winston there are managers of the different departments.

At the close of the plaintiff's evidence, his Honor intimated that the plaintiff, on his own evidence, was not entitled to recover:

1. Because his evidence showed that the sawing of box plank was dangerous, and that he knew it was dangerous, and that he had been engaged in similar work ten or twelve years, and knew the character of the work.

2. Because his testimony did not establish any contractual relation between him and defendants.

The plaintiff, from this intimation, submitted to a nonsuit, and appealed to the Supreme Court.

*Mr. J. S. Grogan,* for appellant.
*Messrs. Jones & Patterson,* and *Watson, Buxton & Watson,* for appellees.

CLARK, J. We can not agree with the defendant's counsel that if an employee operates a machine which is lacking in safety appliances which have come into general use, that this

is an "assumption of risk" which releases the employer from liability. That would be simply to hold that if such appliances are not used the defendant is negligent, but if the pressure of circumstances forces some unfortunate man to accept service with such machine it releases the employer. This negatives the liability of the employer by the very fact of his negligence, and that as to the class most needing protection, those whose urgent need compels them to take work wherever they can get it. As was said in *Sims v. Lindsay*, 122 N. C., 678: "It is not to be held as a matter of law that operatives must decline to work at machines which may be lacking in some of the improvements or safeguards they have seen upon other machines, under penalty of losing all claims for damages from defective machinery. It is the employer, not the employee, who should be fixed with knowledge of defective appliances, and held liable for injuries resulting from their use. It is only where a machine is so grossly or clearly defective that the employee must know of the extra risk, that he can be deemed to have voluntarily and knowingly assumed the risk."

To illustrate—if a railroad company fails to use automatic couplers it is negligence *per se*. *Troxler v. R. Co.*, 124 N. C., 189; *Greenlee v. R. Co.*, 122 N. C., 977. If one should take service upon a railroad not having such appliances, this would not absolve the railroad from liability for its negligence in not using such life and limb-saving device. The doctrine of "assumption of risk" is more reasonable and extends no further than that if a particular machine has become injured or dangerous, and the employee, seeing the danger, does not report its condition, but goes on with his work in disregard of it, he assumes the risk. The difference between "knowledge of the danger" in the first case (absence of safety appliances which should be in use), and "assumption of the

risk" (by working without protest at a machine which has become defective and dangerous), is pointed out among many other cases, in a late decision in the House of Lords, *Smith v. Baker,* App. Cases L. R. (1891), 325, in a discussion of the difference between the maxims *"scienti non fit injuria"* and *"volenti non fit injuria,"* the former not being law, for which Lord Halsbury cites Bowen, L. J., in *Thomas v. Quarterwine,* 18 Q. B. D., 685, and Lindley, L. J., in *Yarmouth v. France,* 19 Q. B. D., 647, 660, and further cites from the latter case that even when an employee reports the defect, if he is told to go on with his work, and does so to avoid dismissal, a jury may properly find that he had not agreed to take the risk, and had not acted voluntarily in the sense of having taken the risk upon himself. Whereupon Lord Halsbury sums up "in order to defeat a plaintiff's right to recover by the maxim relied on (*volenti non fit injuria, anglice,* 'assumption of risk'), the jury ought to be able to affirm that he consented to the particular thing being done which would involve the risk, and consented to take the risk upon himself." This has the weight of practical common sense, no matter from what court it came, but with some, common sense has an added value when it is found in a decision of the House of Lords. The distinction is wide between mere "knowledge of the danger," and "voluntary assumption of the risk."

Besides, "assumption of risk" is a matter of defense, analagous to, and indeed, embraced in, the defense of "contributory negligence," *Rittenhouse v. Railroad,* 120 N. C., 544, and it is an error to direct a nonsuit. *Cox v. Railroad,* 123 N. C., 604. The jury, as Lord Halsbury says, must pass upon the question whether the employee voluntarily assumed the risk. It is not enough to show merely that he worked on, knowing the danger.

But the plaintiff, in fact, failed to make out negligence on

the part of the defendants upon the evidence because he failed to show that the safety appliance which he alleges would have prevented the injury was in general use, and, in fact, he shows the contrary. The rule laid down in *Witsell v. Railroad,* 120 N. C., 557, is not that it is. required that the latest improved appliances be provided, but only that "It is negligence not to adopt and use all approved appliances and safeguards which are in general use." This has been approved, *Greenlee v. Railroad Co., supra; Troxler v. Railroad, supra,* and in other cases. The intimation that upon the evidence the plaintiff could not recover was correct, but not for the reason given by the Judge.

It is unnecessary, in this view, to consider the other ground assigned that. the evidence did not establish any contractual relation between the plaintiff and defendants. It may be said, however, that as a general rule the negligence of an independent contractor is not chargeable to his employer. *Engle v. Eureka Club,* 137 N. Y., 100; 33 Am. St. Rep., 692, and note.

Affirmed.