ORR v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

(Filed May 26, 1903.)

1. NEGLIGENCE—*Master and Servant—Contributory Negligence.*

   Where the negligence of an employer is a continuing one, as the failure to furnish safe appliances in general use, there can be no contributory negligence by the employee which discharges the liability of the employer.

2. NEGLIGENCE—*Contributory Negligence—Assumption of Risk—Master and Servant.*

   An employee will not be held to have assumed the risk in undertaking to perform a dangerous work unless the act itself is obviously so dangerous that in its careful performance the inherent probabilities of injury are greater than those of safety.

ACTION by J. S. L. Orr against the Southern Bell Telephone and Telegraph Company and others, heard by Judge *A. L. Coble* and a jury, at October Term, 1902, of the Superior Court of MECKLENBURG County. From a judgment for the plaintiff, the defendant appealed.

*Jones & Tillett,* for the plaintiff.
*Maxwell & Keerans,* for the defendants.

DOUGLAS, J. This case was before us at February term, 1902, and is reported in 130 N. C., 627. The essential facts are sufficiently stated in that opinion, and the principles of law therein decided, as pertaining to the facts of this case, remain the law of the case. This court then said, in setting aside a judgment of non-suit: "But we do think it was the duty of the *defendant* to furnish the plaintiff with the proper tools and appliances with which to do this dangerous work, and that it was not the duty of the *plaintiff* to furnish them." As the court then held that it was error in the court below to non-suit the plaintiff, it would have been equal error to have done so now. This disposes of two of the plaintiff's exceptions.

Two other exceptions were to the refusal of the court to direct the jury that if they believed the evidence they should find the first and third issues in favor of the defendant. Owing to the nature of the evidence these prayers were properly refused. The usual issues were submitted: 1. As to the negligence of the defendant. 2. The contributory negligence of the plaintiff. 3. Assumption of risk; and 4. Damages. They were all found in favor of the plaintiff under instructions in which we see no error.

There are no exceptions as to the admission or exclusion of testimony, but all relate to the motions to non-suit and prayers given or refused. Those relating to the respective duties of the plaintiff and defendant to carry such tools as were needed are settled by the former opinion. It was the duty of the master to furnish such tools, and as this was a personal duty it could not be delegated to a fellow servant so as to relieve the master. The mere fact of such delegation would create a vice-principal to that extent. *Chesson v. Lumber Co.,* 118 N. C., 59; *Wright v. Railway Co.,* 123 N. C., 280; *Bolden v. Railway Co.,* 123 N. C., 614.

The order to take the tools was not addressed to the plaintiff individually, but to all the hands collectively. If the plaintiff had been told what particular tools he should personally take, and his injury had resulted from his failure to carry such tools, the case would be different. The mere fact of his attempting to do the work without such tools was not in itself an assumption of the resulting risk, and this was practically held in our former opinion. Holding to the contrary would in practical effect nullify our decisions requiring the master to furnish proper tools, as in all cases the negligence of the defendant would be then neutralized by the plaintiff's implied assumption of the risk. The failure of the master to furnish reasonably safe machinery and proper tools is regarded as continuing negligence, which

becomes the proximate cause of the injury. This is one of the basic principles in the important cases of *Greenlee v. Railway Co.,* 122 N. C., 977; 41 L. R. A., 399; 65 Am. St. Rep., 734, and *Troxler v. Railway,* 124 N. C., 189; 44 L. R. A., 313; 70 Am. St. Rep., 580. In the latter case, which although later in point of time is perhaps the leading opinion upon the subject, having been more fully considered and concurred in by a unanimous court, it is said: "Where the negligence of the defendant is a continuing negligence (as the failure to furnish safe appliances in general use, when the use of such appliances would have prevented the possibility of the injury), there can be no contributory negligence which will discharge the master's liability. This has been repeatedly held. *Norton v. Railroad Co.,* 122 N. C., 911; *McLamb v. Railroad Co.,* 122 N. C., at p. 873; *Cone v. Railroad Co.,* 81 N. Y., 206; 37 Am. Rep., 491. The failure to provide the necessary appliances is the *causa causans.*" It is contended that even if the plaintiff was not guilty of contributory negligence, he knew that the tools were not at hand, and assumed the risk of taking down the pole without them. It was argued that this was a simple operation, equivalent to sending a man to cut down a tree, the danger of which could easily be determined by any one. If we thought so, this would end the case, but taking down a telegraph or telephone pole is a distinct and dangerous operation. The pole is neither cut down nor permitted to fall, as that would probably destroy it and its attachments. It is dug up and let down by degrees so as to protect it from injury. The danger lies in the great leverage of a long and heavy pole, to counteract which the resisting force must be applied near the upper end. This can be done only by spikes and "dead-men" or something equivalent thereto. The former are small poles with sharp spikes in one end. Deadmen are like crutches, on which the telegraph pole that

is being lowered is permitted to rest while the men are changing their positions and taking a fresh hold.

In cases where the defendant fails to perform its duty in furnishing safe and suitable appliances, the plaintiff will not be held to have assumed the risk in undertaking to perform a dangerous work, unless the act itself is obviously so dangerous that in its careful performance the inherent probabilities of injury are greater than those of safety. This is in analogy to the rule laid down in the following cases: *Hinshaw v. Railroad,* 118 N. C., 1047; *Coley v. Railroad,* 129 N. C., 407; 37 L. R. A., 817; *Cogdell v. Railroad,* 129 N. C., 398; *Thomas v. Railroad,* 129 N. C., 395.

Referring again to the argument that the principle of this decision, if carried out to its fullest extent, would apply to the ordinary work upon a farm, we can only repeat what we have already said, that "We feel compelled to carry out a principle only to its necessary and logical results, and not to its furthest theoretical limit in disregard of other essential principles." *Chappell v. Ellis,* 123 N. C., 259, 263; 68 Am. St. Rep., 822. We do not mean to say that farmers have any greater rights or exemptions than other classes of our people; but simply that the character of their work does not require the same degree of care as that of others enjoyed in more dangerous occupations. This principle is so recognized by the Supreme Court of the United States in *Railroad v. Mackey,* 127 U. S., 205, in sustaining the constitutionality of the Kansas Fellow Servant Act, where the court says on page 210: "But the hazardous character of the business of operating a railway would seem to call for special legislation with respect to railroad corporations, having for its object the protection of their employees as well as the safety of the public. The business of other corporations is not subject to similar dangers to their employees, and no objection therefore can be made to the legislation on the ground of its making

an unjust discrimination. It meets a particular necessity, and all railroad corporations are, without distinction, made subject to the same liabilities."

This case was quoted and approved in *Railroad v. Herrick,* 127 U. S., 211; *Railroad v. Pontius,* 157 U. S., 209 and *Railroad v. Matthews,* 165 U. S., 1.

The judgment of the court below is

Affirmed.