HICKS v. MANUFACTURING CO.

(Filed May 9, 1905.)

*Admissions of Attorneys—Proximate Cause—Disobedience of Orders—Duty of Employer—Defective Appliances— Assumption of Risk—Contributory Negligence—Issues— Continuing Negligence.*

1. Admissions of fact by an attorney only bind a client when they are distinct and formal and made for the express purpose of dispensing with proof of a fact on the trial. Therefore admissions at a former trial which amount only to counsel's opinion adverse to his client on facts reported to him are incompetent.

2. An instruction which left it to the jury to determine whether plaintiff's disobedience of orders was the proximate cause of his injury, was erroneous, where there could be no two opinions among fair-minded men as to the result if he had obeyed the orders and stopped the machine while cleaning it.

3. An employer of labor is required to provide for his employees a reasonably safe place to work and to supply them with machinery implements and appliances reasonably safe and suitable for the work in which they are engaged and such as are approved and in general use in plants and places of like character and to keep such machinery in a reasonably safe condition.

4. An employee will not be deemed to have assumed the risk from the fact that he works on in the presence of a known defect unless the danger be obvious and so imminent that no man of ordinary prudence and acting with such prudence, would incur the risk which the conditions disclose.

5. It must be left largely to the discretion of the trial Judge whether or not the two defences of contributory negligence and assumption of risk, where they are open to the defendant on the evidence, shall be submitted to the jury under separate issues.

6. In an action by a mill employee for damages for personal injuries, an instruction that if the jury should find that the negligent failure to furnish proper appliances in general use was the proximate cause of the injury, then the defence of contributory negligence was not available, was erroneous—the doctrine of continuing negligence as declared in Greenlee and Troxler cases not being applicable.

ACTION by Joseph Hicks against Naomi Falls Manufacturing Company, heard by *Judge T. J. Shaw* and a jury at the January (Special) Term, 1905, of the Superior Court of GUILFORD County.

The plaintiff had formerly instituted a suit on the same cause of action in the Superior Court of Randolph County, in which a non-suit had been taken, and subsequently instituted this action in the Superior Court of Guilford County, and this second action is the subject of the present appeal.

Four issues were submitted to the jury: 1. Was plaintiff injured by the negligence of the defendant as alleged in the complaint? 2. Did plaintiff voluntarily assume the risk involved in cleaning the mote box while the lapper was in motion as alleged in the answer? 3. Did plaintiff by his own negligence contribute to his own injury? 4. What damage is plaintiff entitled to recover?

There were allegations and evidence by the plaintiff tending to show that he was employed in the defendant's mill and operating a certain machine, known as a lapper, and, while operating it, his hand was severely and permanently injured by being caught in the wheels and knives of the lapper; that this injury was caused by the negligence of the defendant in failing to provide the plaintiff with safe appliances and machinery for his use while he was in its employ as aforesaid— the negligence alleged against the defendant being that the

lapper was unskillfully and dangerously made, because of the fact that underneath the lapper the wheels and knives of the machine were unprotected and exposed; whereas, in all properly constructed lappers approved and in general use, such wheels and knives were protected and covered; that in the proper use of the machine, the trash and motes continually collected underneath it, and it was necessary for the plaintiff to keep that cleaned out in the proper working of the machine; that the plaintiff, in the exercise and performance of his labor as operator of this machine thrust his hand under the same for the purpose of cleaning out the motes and trash which had collected there, and while carefully endeavoring to perform this duty, believing that said knives and wheels were properly protected, and unaware of the dangerous condition of the machine, the knives and wheels of the lapper, which were negligently left uncovered and unprotected by the defendant, caught and mangled his hand.

The plaintiff further alleged and testified that the defendant negligently failed to furnish him any appliances, such as were approved and in general use, for cleaning out the lapper without using his hand underneath the machine and in close proximity to the knives and wheels of the same, by the operator thereof, and that but for such negligent acts and conduct of the defendant, his injuries would not have occurred.

The defendant denied these allegations and offered evidence to show that the machine is in every way properly constructed, was a standard machine in general use in cotton manufacturing, was erected by a responsible and competent party, and in every way fitted for the work to be done by it, and in no way defective or out of repair, and that all appliances furnished were approved and in general use for the proper working of the machine. The defendant further offered evidence to the effect that the plaintiff assisted in putting up the machine and was fully aware of the alleged

defect, of which he complains, and of all the dangers incident to its operation. There was further evidence on the part of the defendant to show that the plaintiff was guilty of contributory negligence in that he attempted to clean the machine while in motion, contrary to the express directions of the superintendent; that by reason of his assumption of risk and of contributory negligence, the plaintiff was barred of recovery.

His Honor explained the contentions of the parties upon the evidence, and on the law he charged the jury as follows: On the first issue, in substance that if the defendant failed to furnish the plaintiff with machinery and appliances reasonably safe and suitable for the work in which he was engaged and such as were approved and in general use, and this failure was the proximate cause of the plaintiff's injury, they would answer the first issue "yes." But if the machinery and appliances were of this kind, there would be no negligence and the jury would answer the issue "no." His Honor further charged the jury as to the first issue: Or if you find from the evidence that the superintendent of the defendant's mill instructed the plaintiff to stop the lapper while cleaning it out and that the plaintiff disobeyed such instruction and was cleaning out the mote box while the lapper was running, and that the plaintiff was injured while so doing in violation of his instruction, and that such failure to obey the instruction was the proximate cause of the plaintiff's injury, then the court charges you that you should answer the first issue "no."

On the second issue, after declaring the law ordinarily applying to assumption of risk, His Honor charged the jury as follows: "But when the master is guilty of continuing negligence, as in furnishing defective machinery or in failing to furnish his servant with appliances in general use, the servant in using such defective machinery, or in attempting to discharge his duties without implements in general use,

will not be held to have assumed the risk in undertaking to perform a dangerous work unless the act itself is obviously so dangerous that in its careful performance the inherent probabilities of injury are greater than those of safety."

On the third issue His Honor charged the jury that if they answered the first issue "yes," they would have found the defendant guilty of continuing negligence, and that they should answer the third issue "no."

Under the charge of the court there was a verdict and judgment in favor of the plaintiff, and the defendant excepted and appealed.

*R. C. Strudwick* for the plaintiff.
*W. P. Bynum, Jr.,* and *P. H. C. Cabell* for the defendant.

HOKE, J., after stating the facts: On cross examination of the plaintiff, the defendant's counsel proposed to ask the witness if his attorney, on the trial of the former case in Randolph County, and who is not now appearing for the plaintiff, had not said in open court that if the evidence was as stated by defendant's witnesses, the plaintiff had no case, and further, whether such counsel at said former trial had not suggested that each side select a man to go to the factory and examine machines, and if found to be as claimed he would take a non-suit, and, on return of the men selected, his then attorney had not taken the non-suit. The evidence in the proposed testimony was held incompetent by the trial judge and the defendant excepted. These declarations were not made at a place nor under circumstances where the plaintiff could be expected or permitted to protest or reply, and derive no force therefore from the fact that the plaintiff may have been present when the statement was made. If held competent, it must be on the ground that the plaintiff is bound in this instance by the admissions of his attorney.

Admissions of fact by an attorney only bind a client when

they are distinct and formal and made for the express purpose of dispensing with proof of a fact on the trial, and less formal admissions of counsel at a former trial are not evidence against a client at a subsequent trial. Admissions which occur in mere conversation, though they relate to matters at issue in the case, cannot be received in evidence against a client. Weeks on Attorneys, Sec. 223, citing *Wilkins v. Stidger,* 22 Cal., 230 ; *Treadway v. County,* 40 Iowa, 526 ; 1 Greenleaf Ev. Sec. 186. The admissions sought to be introduced in this case however can hardly be considered admissions of fact at all, but amount only to the attorney's opinion adverse to his client on facts as reported to him, and are clearly incompetent. *Voorhees v. Porter,* 134 N. C., 591, 598.

Recurring then to the charge of the court, and it is to this that the remaining exceptions of the defendant are addressed : His Honor properly stated to the jury the obligation of the employer to furnish appliances, etc., reasonably safe and suitable, but in charging the jury in reference to the plaintiff's disobedience of his employer's orders, we think there was error to the defendant's prejudice, which entitles it to a new trial.

These orders were said to be that the plaintiff must never clean out the mote box without first stopping the machine, and His Honor left it to the jury to determine whether there was disobedience of such orders, and also whether the same was the proximate cause of the injury.

It is the law in this State that where on the facts admitted or established, the question of the existence or absence of actionable negligence is clear, so that there can be no two opinions among fair minded men in regard to it, then the court must say whether it does or does not exist, and this rule extends and applies not only to the question of negligent breach of duty, but also to the feature of proximate cause. Where a negligent breach of duty is established, the question

of proximate cause is almost in all instances for the jury, but it is not always or necessarily so. In this case there can be no two opinions as to the result if plaintiff had obeyed the orders said to have been given him. Every man would say without question, if the plaintiff had obeyed the order and stopped the machine he could have cleaned out the box in perfect safety. There was conflict of testimony in regard to whether such orders had been given, and whether the plaintiff at the time of the injury was acting in violation of them, and this the jury must decide. But if this is established, then the court should declare and so charge the jury that this was the proximate cause of the injury, and in failing to do this there was error as stated. This entire matter as to disobedience of orders and its effect should more properly be submitted under the issue of contributory negligence where the burden of proof can be placed on the defendant as required by the statute.

But on either issue, if it is established that the plaintiff was injured by reason of disobedience of orders in cleaning out the mote box, while the machine was in motion, this, as a matter of law, would be a negligent breach of duty which was the proximate cause of the injury, and the court should so tell the jury. It would be concurrent negligence of the plaintiff, contributing to the injury at the time of impact, which would bar a recovery.

As there is to be a new trial and the parties plaintiff and defendant have presented radically different views as to the true rule for determining the rights of the parties, on the two issues of assumption of risk and contributory negligence, and the questions are raised by exceptions properly entered, we deem it right to say further that it is accepted law in North Carolina that an employer of labor to assist in the operation of railways, mills and other plants where the machinery is more or less complicated, and more especially when driven by mechanical power, is required to provide

for his employees, in the exercise of proper care, a reasonably safe place to work and to supply them with machinery, implements and appliances reasonably safe and suitable for the work in which they are engaged, and such as are approved and in general use in plants and places of like kind and character; and an employer is also required to keep such machinery in such condition as far as this can be done in the exercise of proper care and diligence. *Witsell v. Railroad,* 120 N. C., 557; *Marks v. Cotton Mills,* 135 N. C., 287.

True, the employee is said to assume all the ordinary risks incident to the employment, but it is as well established that dangers attributable to the negligence of the master, when material to be considered, are usually classed under the head of extraordinary risks, and these the employee does not assume.

This last principle applies in full force where the conditions of increased hazard, attributable to the master's negligence, are not known to the employee or could not be discovered in the exercise of reasonable care. The employee ordinarily has a right to assume that the employer has done his duty. This assumption is not absolute, however, nor held to obtain in the face of real and established facts and where the defects and dangers attributable to the master's negligence have become known to the employee, and the risks appreciated under certain circumstances; these conditions may be classed with the ordinary risks which the employee does assume.

So far as railways are concerned, their position in reference to assumption of risk by employees has been made the subject of statutory enactment (Private Laws 1897, Ch. 56), and their rights and liabilities in this respect are dependent largely upon the proper construction of the statute, and are not considered or in any way determined in this appeal. But where there has been no legislation, as in the class of cases we are now considering, it has been declared in this State in

several well considered decisions that where such employer of labor has been negligent in failing to supply his employees with appliances, tools, etc., reasonably safe and suitable for the work in which they are engaged and such as are approved and in general use, and such negligence is the proximate cause of the injury to the employee, such injured employee shall not be barred of recovery by the fact that he works on in the presence of a known defect, even though he may be aware to some extent of the increased danger.

To have such effect, that is to bring the knowledge of such observed conditions of increased hazard imputable to the master's negligence, into the class of ordinary risks which the employee is said to assume, the danger must be obvious and so imminent that no man of ordinary prudence, and acting with such prudence, would incur the risk which the conditions disclose. Labatt on Master and Servant, sec. 279a, 296, 297, 298, 298a; Beach on Cont. Neg., Sec. 361; *Sims v. Lindsay,* 122 N. C., 678; *Lloyd v. Hanes,* 126 N. C., 359; *Patterson v. Pittsburg,* 76 Pa. St., 389; *Kane v. Railroad,* 128 U. S., 95.

In *Lloyd v. Hanes,* supra, it is held that the distinction is wide between mere knowledge of danger and voluntary assumption of risk. "Assumption of risk is a matter of defence analagous to contributory negligence to be passed on by the jury, who are to say whether the employee voluntarily assumed the risk. It is not enough to show merely that he worked on knowing the danger, but further, it is only where the machinery is so grossly and clearly defective that the employee must know of the extra risk, that he can be deemed to have voluntarily and knowingly assumed the risk."

In *Sims v. Lindsay,* supra, it is held "that an operative, by not declining to work at a machine lacking some of the safeguards which he has seen on other similar machines, does not thereby waive all claim for damages from a defective

machine, unless it be so plainly defective that the employee must be deemed to know the extra risk."

And in *Patterson v. Pittsburg, supra,* it is held: "A. The master is bound to furnish and maintain suitable instrumentalities for the duties required of his servants, and if he does not he is liable for injuries from his negligence. B. If the instrumentality by which the servant is to perform his duty is so obviously and immediately dangerous that a man of common prudence would refuse to use it, the master is not liable for resulting damages, the servant being in this case guilty of concurrent negligence. C. When the servant, in obedience to the master incurs the risk of machinery which though dangerous is not so much so as to threaten immediate injury or it is reasonably probable may be used safely by extraordinary caution, the master is liable for the resulting injury." In several of the recent decisions, the standard in such cases is said to be that these risks are never assumed unless the act itself is obviously so dangerous that the inherent probabilities of danger are greater than those of safety.

This is a correct and satisfactory formula sanctioned by the decisions referred to, and in applying the rule to practical litigation the test is whether or not, under the facts and attendant circumstances including the nature of the defect and danger, the risk is one which a reasonable man should incur by continuing to work under existing conditions, and when the matter is for the jury to determine it may be well to submit the case in terms by that standard.

In this connection may be considered, if they existed, assurances of safety by the master as to the particular defect, promises of change reasonably relied upon, special orders given by a superior, apprehensions of discharge, etc., in determining whether this particular risk may be classed as a risk assumed, which will bar a recovery. While this question, under conditions stated, is thus referred to the principles governing contributory negligence, it must not be con-

sidered that all distinction in these features of actions for negligence are done away with. This is neither intended nor to be desired. There are actions for negligence other than those we are now considering in which assumption of risk is a distinct defence, and in cases like the present there may be other sources of contributory negligence imputable to the plaintiff which would bar his recovery, not embraced in the question of assumption of risk. The employee is not absolved, in cases of this sort at least, of all obligation to have a proper care for his own safety and to work with prudence in the presence of known and observed danger, nor is he free to disobey his employer's orders where such disobedience becomes the proximate cause of the injury, either sole or concurrent. Therefore it may be and frequently is necessary and desirable that these two defences, where they are open to the defendant on the evidence, should be submitted to the jury under separate issues. This matter must be left largely to the discretion of the presiding judge. It is only where the sole default imputable to the employee arises from the fact that he has continued to work in the presence of a known defect and observed danger that the question is immaterial and may be submitted under the one issue or the other.

In his charge on the third issue, His Honor stated that if the jury answered the first issue "yes" they would have found the defendant guilty of continued negligence, and in that event they would answer the third issue "no." In this there was error. It is not true as an abstract proposition, nor is it the law of this case, that the defense of contributory negligence is not available to the defendant in an action of this character. As we have just said, an employee in cases of the kind we are now considering is not absolved from all obligation to behave with reasonable prudence and discretion, and if he is negligent and such negligence is declared to be the proximate cause of the injury, he is barred of recovery.

In charging the jury on the third issue that the defense

HICKS *v.* MANUFACTURING CO.

of contributory negligence was not permissible in case the jury should find in response to the first issue that the negligent failure of the defendant to furnish proper appliances in general use was the proximate cause of the injury, His Honor below who tried this case was no doubt misled by the opinion in *Orr v. Telegraph Co.,* 132 N. C., 691, in which the principle of *Greenlee's case* and *Troxler's case* is apparently extended to all cases where there was a negligent failure by the employer to furnish proper tools and appliances. In *Orr's case,* there were the issues of negligence, contributory negligence and assumption of risk. The only negligence imputed to the defendant was in not furnishing proper appliances with which to do hazardous work, and the only default imputed to the plantiff by way of defense was in going on with the work with such appliances as he had and with every opportunity to know and observe both the defect and the danger. Under a proper charge, the court, on the issue as to assumption of risk, gave the defendant the benefit of the only phase of this defense which was open to him on the testimony, and having done this, there was no call to make any further ruling on the question of contributory negligence.

If however, it was intended by *Orr's case* to decide that in any and every instance where there is a defective appliance negligently furnished by the employer, which becomes the proximate cause of an injury, the defense of contributory negligence is thereby withdrawn, then the court does not think that the case in this respect was well decided. There is nothing here said which must in any way be construed as indicating a doubt as to the wisdom and correctness of the *Greenlee* and *Troxler cases,* or a desire to modify or question them. They were both cases where there was a failure on the part of the railroad company to supply automatic couplers for the operation of their trains. The occupation was one of imminent peril which these automatic

couplers well nigh entirely remove, and at a moderate cost. The failure to supply them was causing extended and ever increasing disaster. Thousands of men throughout all portions of the country were being killed or maimed for life, and conditions were so alarming as to become a matter of national concern and the subject of national legislation. In the presence of such conditions the Supreme Court of North Carolina in advance of the operative effect of the national statute, announced the principle in *Troxler's case* as follows: "Reason, justice and humanity, principles of common law, irrespective of congressional enactments and Interstate Commerce Commission regulation, require the employer to furnish the employee safe modern appliances with which to work, in place of antiquated, dangerous implements, hazardous to life and limb, and the failure to do so, upon injury ensuing to the employee, is culpably continuing negligence on the part of the employer, which cuts off the defense of contributory negligence and negligence of a fellow servant, such failure being the *causa causans.* It is negligence *per se* in any railroad company to cause one of its employees to risk his life and limb in making couplings which can be made automatically without risk."

These opinions could be well justified and upheld on the ground that a failure to correct an evil of this magnitude when it could be accomplished so effectually at an insignificant cost, was such a reckless and wanton disregard of the lives and safety of employees as to amount to an intentional wrong against which contributory negligence is no defense. They have, however, been approved and accepted as decisions eminently just and proper in applying the principles of the law of negligence to new and changing conditions, and can be upheld and supported both by reason and precedent.

A notable incident of like kind will be found in the case of *Smith v. Baker,* House of Lords Appeal Cases, (1891) at page 325, in which it was declared, contrary to the gener-

ally accepted doctrine at the time, that the mere fact that
the plaintiff undertook and continued in the employment
with full knowledge and understanding of the danger arising
from the systematic neglect to give him warning, did not
preclude 'the employee from recovering and the evidence
would justify the finding that the plaintiff did not voluntar-
ily undertake the risk of the injury and that the action was
maintainable. While these decisions are fully approved and
will no doubt be further applied in cases of like peril and
circumstance, it was never intended to hold that the prin-
ciples therein declared were to be·applied to any and every
failure of employers to provide safe and suitable appliances
to such an extent as to shut off all consideration of contrib-
utory negligence on the part of employees.

In the case we are now considering and in all cases of like
kind, the correct ·way to determine the rights of parties liti-
gant is to submit the case of the defendant's obligation and
responsibility on the issue of negligence and under the law as
here declared. If defense is made that the injured employee
has assumed the risk by working on in the presence of a known
defect and observed danger, but in the honest effort to dis-
charge his duty, this of itself shall not bar his recovery un-
less the instrumentality or appliance or machine is so obvi-
ously and immediately dangerous that no man of common
prudence would continue in the work and incur the risk, in
which case the risk may be said to have been assumed, and
the question is to be determined on the principle of con-
current, contributory negligence, and can be submitted either
on the issue as to assumption of risk or contributory negli-
gence as may be most desirable. In case there is other neg-
ligence attributable to the plaintiff which may be the sole or
concurrent proximate cause of his injury, as when he acts
in disobedience of his employer's orders in cases where obed-
ience would have prevented the injury, this can be submitted

HICKS *v.* MANUFACTURING CO.

under a separate issue of contributory negligence, and under proper rulings addressed to questions of this character.

The defendant is always entitled to have both phases of defense presented when there is evidence to justify it, except where changed by legislation or in cases like those of *Greenlee* and *Troxler, supra;* and whether they shall be presented under one or two issues must be left largely to the legal discretion of the presiding judge.

There were several specific prayers for instruction made by the defendant, in which it was contended that assumption of risk should be considered as conclusively established in all cases where there was knowledge of a defective machine and the danger incident thereto, and some of the authorities cited would seem to support that contention. As we have endeavored to show, the position is not well taken, and we think the correct way to try this case is in accordance with the rules herein declared.

For the error above pointed out there must be a new trial and it is so ordered.

New Trial.

WALKER, J., concurring: A new trial is awarded in this case because it is apparent as a matter of law that if the plaintiff disobeyed the order to stop the machine when cleaning it, the proximate cause of the injury was his failure to observe instructions. In this view of the case I fully concur. But it is my opinion that the presiding judge was right in submitting this question to the jury under the first issue. If the plaintiff was told that he must not clean the machine while it was running and he did clean it in violation of this instruction while it was in motion, and was injured, his own wilful act in disobeying the order was not only the proximate cause of his injury, but the sole efficient cause thereof. When the defendant forbade him to clean the machine while it was running and directed him to stop it before attempting to

clean it, it provided for him a perfectly safe method for performing his work and if he chose to disregard the order of his employer and to do the work in a way not only dangerous but which had been forbidden, his employer is in no legal sense responsible for his conduct. Where is there any act of negligence or any omission of duty on the part of the employer? He cannot be said to have been negligent at all, unless there was a breach of some duty owing by him to his employee. The fact that a slat was missing did not render the cleaning of the machine dangerous if the employee had obeyed instructions and the law will not hear him allege that the machine was defective and dangerous when it was his own wrongful act that made it so. No man will be permitted to take advantage of his own wrong, is a maxim of the law of universal acceptance and application. The master must provide for his servant a reasonably safe place, appliances and methods for performing his work and, when he has done this, he has fulfilled his duty, and if the servant then chooses to reject the provision thus made by the master and adopts some method of his own for doing the work, which proves to be dangerous, and he is injured thereby, it is impossible to see how the master has failed in his duty in any respect so as to impute the injury of the servant to his negligence as in any degree its cause, or as even a contributing cause; the fault lies solely with the servant. He is to blame for doing that which he was forbidden to do and which caused the injury. He was not required to put his hand between the slats when operating the machine, nor was he required to do so when cleaning it while it was in motion. His master gave him a perfectly safe way to clean it and he deliberately chose a dangerous one. In such a state of the facts I am unable to see that the defendant was at fault. It is not a question involving contributory negligence for that presupposes negligence of the master. The case turns upon whether the master was negligent. If he gave the instruction and it was

violated by the servant, the latter was not injured by the
master's negligence. If the instruction was not given to the
servant, then the master's negligence caused the injury, if
the machine was defective and the injury resulted therefrom
and the servant was himself free from any negligence which
proximately contributed to his injury.

The majority of the court in *Mason v. Railroad,* 111 N.
C., 482, and 114 N. C., 718, took this view of the question,
as will appear from the concurring opinion of *Shepherd, C.
J.,* (111 N. C., at p. 499) and the concurring opinion of
*Burwell, J.,* in the same case when again before this court
(114 N. C., at p. 724.) In that case it is true the defect was
in bumpers and the principle as applied to that class of
cases was somewhat modified in *Greenlee v. Railroad,* 122
N. C., 977, and *Troxler v. Railroad,* 122 N. C., 902 and 124
N. C., 189, but so far as it applies to the class of cases with
which we are now dealing, it remains to this day unimpaired.
If we insert the word "slats," where the word "bumpers" ap-
pears in the two opinions just referred to, the application
of the principle to our case is made perfectly plain. *Chief
Justice Shepherd,* said: "In the decisions cited, where a re-
covery was had for negligence in not furnishing bumpers,
there was either no regulation like that in the present case,
or such regulation had been waived. I cannot understand
how it was the duty of the defendant to provide against an
accident which could not possibly have happened but for a
violation of its reasonable regulations. However negligent,
then, as to others, the defendant may have been in not see-
ing that the cars were provided with bumpers, such negli-
gence was not actionable by this plaintiff if his injuries were
caused by his disobedience of an existing regulation (known
and agreed to by him) forbidding him from going between
the cars under any circumstance for the purpose of coup-
ling." *Mason v. Railroad,* 111 N. C., 499. *Justice MacRae*
concurred generally with the Chief Justice in his opinion.

*Justice Burwell* said: "I see in the case no evidence whatever of negligence on the part of the defendant and abundant evidence of negligence on the part of the plaintiff. The rule of the defendant company of which the plaintiff had full knowledge, and which, out of abundance of caution, he had been required specially to promise to obey, prohibited him from going between the cars for the purpose of coupling or uncoupling them, 'under any circumstances' when they were attached to an engine. . . . The rule was notice to the plaintiff that he should expect no provision for his safety when the cars were pushed together by the movement of the engine, for he was expected not to go between them." *Mason v. Railroad,* 114 N. C., at p. 724.

It is impossible to see how the master can be said to be guilty of any negligence when the servant committed the only wrong in violating a rule adopted for his own safety, and especially when it clearly appears that the accident could not have happened if he had kept and observed the implied promise he made to his master not to clean the machine when in motion. He had a perfectly safe way to do his appointed work but, instead of pursuing it, he chose a different one and thrust his hand into a place where he must have known there was danger because he had been warned against the use of that method in doing the work. With respect to the plaintiff, the machine was not defective because he had a safe way with which to do his work and, if he had confined himself to that way, he would not have been hurt. Besides, the master was not oblidged to anticipate his servant's disobedience of orders and provide against its consequences. It follows that the defendant owed no duty to the plaintiff and therefore could not have been guilty of any negligence, if he gave the order and it was disobeyed.

BROWN, J. I concur in the opinion of *Mr. Justice Walker.* The slats at the top of the môte box, between that and the lapper, were used solely to protect the operative from injury

when cleaning out the mote box while the lapper was running. When the lapper was at a stand still, the slats were useless. It was not negligence therefore to leave one or all the slats off if the operative is commanded to clean out the mote box only when the lapper is at a stand still, and to stop the lapper for that purpose.