A. R. WALTERS, BY NEXT FRIEND, *v.* ROCKY MOUNT SASH AND BLIND COMPANY.

(Filed 15 March, 1911.)

1. **Master and Servant—Instructions to Servant—Inexperienced Servant—Dangerous Machinery—Questions for Jury.**
   If an employee is instructed by the master to do a dangerous act without warning against danger, he having had no experience in doing the act, the question of negligence is for the jury.

2. **Same—Dangerous Machines—Repair—Obvious Danger—Rule of the Prudent Man—Contributory Negligence—Questions for Jury.**
   The plaintiff, an employee 19 years of age, was changed, under his protest, from working at a harmless machine to a dangerous one, the latter machine being badly out of repair and containing revolving knives run by machinery. The plaintiff showed his superior that the result of the work upon the machine was unsatisfactory, and was instructed to do the best he could; also, to "get a monkey-wrench and see if he could raise the bed back to its proper place." The bed having slipped down, left the revolving knives exposed, and while the plaintiff was endeavoring to raise the bed with a worn monkey-wrench, the wrench slipped from a nut he was working on, and his fingers were cut off by the revolving knives: *Held,* (1) it was negligence for the master not

to have instructed the servant in the operation of the dangerous machine; and in ordering him to repair it without instructions as to stopping it, etc.; (2) there being no evidence that plaintiff knew of the danger in attempting to repair the machine, the danger was not so obvious that a reasonably prudent man would not have undertaken it, and a judgment of nonsuit was improperly allowed.

APPEAL by plaintiff from *Peebles, J.,* at October Term, 1910, of EDGECOMBE.

The facts are sufficiently stated in the opinion of the Court by *Mr. Chief Justice Clark.*

*H. A. Gilliam, Aycock & Winston,* and *Woodard & Hassell* for *plaintiff.*
*F. S. Spruill* for *defendant.*

CLARK, C. J. The plaintiff, 19 years of age, had been working in the defendant's factory in the sash department. On 4 June, 1909, the foreman transferred him to the moulder, a dangerous machine with revolving knives. The plaintiff objected to going, but the foreman told him that he was short of hands and that a green hand was running the moulder who was tearing it all up. The foreman gave the plaintiff no instructions. The plaintiff undertook to do the work, but found that the machine was "shaking and rattling like the wood was beating down on the bed." The plaintiff carried the piece of wood he was working on to the superintendent, who said it would have to be smoother than that, and to go and do the best he could with it. The plaintiff then showed the material to the machinist, who said he had done all he could to the machine; that it was not any good and ought to be in Tar River. The plaintiff could not make the machine work satisfactorily, shut it off, and tried to locate the trouble. He found that a part of the bed had slipped down. He reported this fact to the foreman, who told him to "Get a wrench and see if you can't raise that bed back to its proper place." Plaintiff was trying to raise the bed, which no one showed him how to do nor told him it was dangerous. He found it was necessary to remove the pressure bar. When he was trying to loosen it, the

wrench slipped off the tap, which was worn, and the plaintiff's fingers were cut off by the revolving knives, which were exposed by the bed being dropped down. This was the fourth day the plaintiff had worked on that machine. In that time he had stopped it, he says, perhaps 20 times; that if it had been stopped while he was removing the pressure bar his fingers would not have been cut off; but he further says that he could not remedy the trouble by raising the bed when the machine stopped. He further states that the foreman did not instruct him to stop the machine when at work on it, nor was there any general order to that effect, and he did not see any danger in attempting to adjust the bed while running it; that he could not adjust the machine (as the foreman told him to do) while it was stopped. The instruction of the foreman to him was, "Go back and do the best you can," and that he had never seen anybody work on the machine or undertake to repair it.

This bare summary of the evidence of plaintiff shows error in directing a nonsuit. A green hand, 19 years of age, transferred against his protest to a more dangerous employment, without instruction, the machine being a dangerous one, and so badly out of repair that the machinist declared it ought to be in the river. "If an employee is instructed to do a dangerous act without warning against danger, he having no previous experience in doing the act, the question of negligence is for the jury." *Holton v. Lumber Co.,* 152 N. C., 68.

As was said by *Brown, J.,* in *Shaw v. Mfg. Co.,* 146 N. C., 238, "The trial judge might well have instructed the jury that if they believed the evidence the defendant was guilty of negligence in failing to furnish plaintiff with sufficient appliances reasonably necessary to the accomplishment of the work." The order of the superintendent to the plaintiff to go on with the work and do the best he could with a broken machine was negligence, as was the similar order of the foreman as to the plaintiff repairing the machine. The risk to the plaintiff was not so obviously dangerous that a reasonably prudent man might not have undertaken it. *Noble v. Lumber Co.,* 151 N. C., 76; *Horne v. R. R.,* 153 N. C., 239; *Pressly v. Yarn*

*Mills,* 138 N. C., 410; *Hicks v. Mfg. Co., ib.,* 326; *Lloyd v. Hanes,* 126 N. C., 359; *Sims v. Lindsay,* 122 N. C., 678. The latter case in its facts is almost identical with the present, the plaintiff in that case having lost her fingers in a mangle in a steam laundry.

The judgment of nonsuit is

Reversed.