W. B. FLANNER, ADMINISTRATOR, *v.* KINSTON COTTON MILLS.

(Filed 22 March, 1911.)

1. **Master and Servant—Independent Duty to Servant—Contributory Negligence—Proximate Cause—Issues.**

   Where a negligent default has been established against an employer by reason of some breach of an arbitrary and independent duty which he owes to his employee, as in failure to supply "machinery known and approved and in general use," a disobedience of instructions on the part of the employee and its effects are to be considered and determined, as a rule, on the issue as to contributory negligence, involving also the question of whether such disobedience is the proximate cause of a given injury.

2. **Same—Ordinary Work—Instructions—Disobedience—Negligence.**

   Where no breach of an arbitrary or independent duty of an employer to his employee is shown, and the former, having the latter to do an ordinary piece of work, gives him instructions concerning it which provide and afford a simple and safe method

FLANNER *v.* COTTON MILLS.

of doing the work, his instructions may also be considered in reference to his responsibility on the first issue, as to his negligence; and if it is shown that conditions have been changed and work of the kind indicated rendered dangerous by reason of the employee's willful disobedience, that the employer did not approve or encourage, no responsibility should attach to him; and this position, as a rule, is not affected by the view the employee may take of his surroundings.

**3. Same—Evidence—Instructions.**

The plaintiff was employed by the defendant to dig in a sand pit 13 feet long, 8 feet wide at the top and 8 feet deep. There was evidence for defendant tending to show that there was no danger in digging in the pit if the sides were "flammed" or sloped, and that in violation of instructions the plaintiff continued to dig straight down or undermine the side, and in consequence it caved in on him to his injury: *Held correct,* an instruction tendered by defendant in substance, that if they believed the evidence of defendant they should answer the first issue, as to defendant's negligence, "No"; and it was error to so modify the instruction as to make their answer to the issue depend upon whether the plaintiff, while in the pit, could see and appreciate his surroundings when digging in disobedience to his instructions.

APPEAL from *Ward, J.,* at November Term, 1910, of CRAVEN.

Civil action. There was evidence on the part of plaintiff tending to show that in July, 1908, plaintiff's intestate was killed by the caving in of a sand pit in which he was working as an employee of defendant; that this pit had been sunk by intestate, working with others, on the premises of defendant company for the purpose of procuring sand to make the brick for a smokestack which defendant intended to build, and at the time of the occurrence was about 13 feet long, 8 feet wide at the top and on an average of 8½ or 9 feet in depth; that the soil was sandy, showing a decided tendency to cave, and that it was negligence on the part of the company to direct or allow its employees to work in the pit without having the same shored or braced in some way to hold the sides in place.

The evidence of defendant tended to show that the soil was firm for 3 or 4 feet and then became somewhat seamed with sand, and below this, several feet, was the sand desired and suitable for making brick. That there was no occasion for

bracing if the pit was properly dug, and many excavations of like kind and of greater size and depth had been made on the premises without such bracing and without harmful incident, by simply sloping the sides of the pit. That intestate had sought employment a few days before and was told that he could dig the pit and procure the sand for the purpose indicated, and that he was instructed expressly and directed to "flam" or slope the sides. That this was done in the main and the pit properly dug, but on the day of the killing the intestate, in violation of the instructions given, had at the depth stated dug the pit straight down and even undermined the sides by digging under the same. That 10 or 15 minutes before the killing the foreman or yard boss, passing the pit, observed that the intestate was digging improperly, and told him not to dig that way, and to stop it or come out of the pit. The boss then passed to some other part of the yard and in 10 or 15 minutes the wall caved in and the intestate was killed. The ordinary issues in actions of this character were submitted, as to negligence of defendant causing intestate's death, contributory negligence on part of intestate, and damages. Among many other prayers for instructions, defendant's counsel requested the court to charge the jury that, if they believed the evidence of the defendant, the intestate was instructed to dig the sides of the pit inward, and not dig under the sides of the pit, and if the jury should find that such orders were disobeyed and such disobedience caused the injury, they should answer the first issue "No." The court gave the instructions with this modification, "That if the intestate Hawkins while in the pit could see and appreciate his surroundings, and dug under the sides of the pit in disobedience of orders and thereby caused the sides to give way, the jury should answer the first issue 'No.' "

There was verdict for plaintiff; judgment, and defendant excepted and appealed.

*Simmons & Ward, D. L. Ward, T. D. Warren, Loftin, Varser & Dawson for plaintiff.*

*Guion & Guion and Rouse & Land for defendant.*

HOKE, J., after stating the case: Where negligent default has been established against an employer by reason of some breach of an arbitrary and independent duty which he owes to his employee, as in failure to supply "machinery known and approved and in general use," a disobedience of instructions on the part of the employee and its effect are to be considered and determined, as a rule, on the issue as to contributory negligence, involving also the question of whether such disobedience is the proximate cause of a given injury. *Hicks v. Mfg. Co.,* 138 N. C., 319. But where there is no such arbitrary standard imposed or no breach of independent duty shown, and an employer having an ordinary piece of work done, gives instructions concerning it which provide and afford a simple and safe method of doing the work, he is entitled to have these instructions considered also in reference to his responsibility on the first issue; and if it is shown that conditions have been changed and work of the kind indicated rendered dangerous by reason of willful disobedience on the part of the employee and which the employer has not approved or encouraged, in such case no responsibility should attach; and this position, as a rule, is not affected by the view that the employee may take of his surroundings. On the first issue the question is, Has the employer done his duty? and under the circumstances suggested, he is entitled to have this question determined, having regard to the kind of work, the instructions given and the conditions established and the results that might be reasonably expected to follow if his instructions had been carried out.

In the present case all of the evidence tended to show that if the sides of the pit had been flammed or sloped, there was no danger attending the work, and the testimony on the part of the defendant was to the effect that the hands engaged in the work had been instructed to do it in that way. Thus the witness J. G. McDuffy, who was at that time the foreman and yard boss, speaking to the question of the employment of intestate and the instructions given, testified:

"Mr. John Barfield was running the card-room; he asked me if I could give the man some work, and I told him I did not

have anything for him to do without he could go in the sand pit, and he said he would bring him out. He brought him out. I told him: 'Mr. Hawkins, I haven't anything for you to do unless you go in the sand pit.' He said: 'I will go in anywheres and work. I can ditch; I have done it, and I can dig for sand or anything else.' I said: 'If you are willing to go in, get a shovel.' He said: 'All right.' He took a shovel and went in the sand pit; that was in the morning somewhere between 6:30 and 7 o'clock; I don't remember the time—something like that."

Q.: Will you state if you gave him any instructions how the work was to be done?

A.: I did; not especially to him, but the whole crowd.

Q.: Was he present?

A.: Yes, sir. I told him to dig it with a flam—flam it down on either side; they hadn't reached the sand yet; they were about a foot and a half from the top.

This witness further stated that a short time before the occurrence, he passed the pit and, having noted that the intestate was digging under the north side of the pit, he said to the intestate: " 'Mr. Hawkins, don't dig under there; if you can't get the sand without digging under there, come out of the hole.' I said: 'It will not do for you to dig under there.' He stuck his shovel down in the middle of the hole and looked up at me and said: 'When I get through with this hole there will be enough done.' I said: 'Don't dig under there any more; if you can't dig without digging under there, come out of the hole; you will make it cave in if you dig underneath.' He commenced digging right at the place where he was standing there by the box. · I turned and went away."

And the witness J. R. Richards, who was working with the intestate in the pit, testified that the pit had been cut from the top in a slope—"flammed in on all sides." That Hawkins had commenced to cut under the side, and he heard the boss tell the intestate not to cut under the side in that way, and the witness himself told him to stop it.

The work was of a kind and character that any one of ordi-

nary experience and observation would know that if the sides were undermined to any extent they were not unlikely to cave, and on the facts in evidence we are of opinion that the defendant was entitled to have the instruction given substantially as prayed for, and that the modification of the prayer made by the court constitutes reversible error.

The principle was declared and approved by this Court in *Whitson v. Wrenn*, 134 N. C., 86, and on authority of that and other cases of similar import we hold that the defendant is entitled to a new trial.

*Venire de novo.*