No. 16,831.

## MYERS *v.* THE W. C. DePAUW COMPANY.

MASTER AND SERVANT.—*Assumption of Ordinary Risks of Service.*—*Age and Understanding of Servant.*—*Presumption.*—An employe of mature age and sufficient understanding will be presumed to have assumed all the ordinary risks attending the service, and where such age and understanding are wanting, such fact should be disclosed by the complaint, otherwise he will be presumed to have attained to such understanding and to be of such age.

SAME.—*Ordinary Risks.*—*Glass Manufactory.*—It is necessarily one of the natural incidents of the handling of glass, in the processes of its manufacture, that it will be broken without violence from, or the fault of, those who handle it.

SAME.—*Dangerous Service.*—*Assumed Risks.*—*Care by Servant.*—The fact that the service is a dangerous one adds nothing to the liability of the master for injuries resulting from the natural and ordinary incidents of the undertaking. The servant is required to exercise his faculties to a degree in proportion to such dangers.

SAME.—*Assumed Risk.*—*Glass Manufactory.*—*Failure to Use Gauntlets.*—If an employe in a glass manufactory knew of the custom of employes to wear leather gauntlets, and with such knowledge he went about his service without them, and without any promise by the master to supply them, the risk became one of the assumed risks of the service, and liability therefor was waived, and the same would be true even if it were the duty of the master to furnish the gauntlets instead of having been a mere custom.

From the Floyd Circuit Court.

*L. A. Douglass* and *W. D. Marshall,* for appellant.

*A. Dowling,* for appellee.

HACKNEY, C. J.—The record in this case presents the question of the sufficiency of each of two paragraphs of complaint.

The first alleged the appellant's employment for the appellee in carrying plate glass to the grinding tables in appellee's plate glass factory; that while so engaged a glass broke and one of the pieces, in falling, struck his wrist and inflicted the injury complained of. The charge

of negligence against the appellee was in failing to notify the appellant of the dangers of the employment, and in neglecting to supply him with leather gauntlets for the protection of his arms and wrists.    It was alleged, as the basis for the conclusion of negligence in failing to supply gauntlets, that it was the custom of the appellee to furnish them to, and at the expense of, employes.

The second paragraph alleged that the service was dangerous, and one of its hazards was in the liability of the glass to break from "causes within itself"; that the appellant was ignorant of such hazard and inexperienced in such service; that the appellee knew of the hazard and of the appellant's ignorance and inexperience, and negligently failed to advise the appellant of the hazard and to instruct him in the service; that the glass carried by the appellant broke, from "causes within itself," and, in falling, cut his wrist.

Appellant's counsel concede that "It is the settled doctrine of the law, that an employe, when of mature age and of sufficient understanding to apprehend the dangers of the service, must be presumed to take all the ordinary risks pertaining thereto, in entering upon his employment." Of the proposition thus conceded there can be no doubt, and if the appellant was not "of mature age and of sufficient understanding to apprehend the dangers of the service" the fact was not disclosed by the complaint. He must, therefore, be presumed to have assumed all of the ordinary risks attending the service. Was the injury sustained the result of any of such risks? It is a matter of common observation that glass is a fragile substance, and that its broken edges are sharp and dangerous. It is necessarily one of the natural incidents of the handling of glass, in the processes of its manufacture, that it will be broken without violence from, or the fault of, those who so handle it.

The complaint in neither paragraph alleges latent imperfections in the plate which caused the appellant's injuries, and if it was intended by the phrase, "from causes within itself," to suggest a latent defect or imperfection, the facts are not so pleaded as to disclose that such latent imperfection was the result of negligence on the part of the appellee.

We do not find that the phrase "from causes within itself," necessarily implies causes not perceptible to one of ordinary observation. Glass being transparent, its ordinary imperfections are patent. In the present case the character of the imperfection, if, indeed, it can be said that an imperfection was alleged, was not disclosed, and whether one of which the appellant should have received notice from the appellee, namely, a latent imperfection, we are not advised.

Those who accept employment involving hazards are not only presumed to be acquainted with the ordinary dangers thereof, but are required to go about the service exercising their faculties to a reasonable degree, in proportion to such dangers. The fact that the service is a dangerous one adds nothing to the liability of the master for injuries resulting from the natural and ordinary incidents of the undertaking. Here the danger resulting in injury was not shown to have been enhanced by any act or omission of the appellee, and was not, therefore, an extraordinary danger as connected with the particular service. Upon the question of the appellee's failure to give warning of the danger, therefore, the complaint is wholly insufficient.

As to the allegation of the appellee's failure to advise the appellant of the custom of supplying to employes the leather gauntlets, the complaint finds no support. It does not appear that such gauntlets were appliances which, by the custom of glass manufacturers, were re-

Myers *v.* The W. C. DePauw Company.

quired to be supplied to servants by the master, nor was it alleged that servants were required, by any rule or custom connected with the service generally, or with that of the appellee specially, to wear such gauntlets. It was simply alleged that the appellee's custom was to supply them at the expense of the servant. A knowledge by the appellant of such custom is denied, but it does not appear that he had no knowledge that employes wore such gauntlets for the protection of their wrists. If we may presume that he knew of the custom of employes to so wear them, and that with such knowledge he went about his service without them, and without any promise by the master to supply them, the risk became one of the assumed risks of the service, and, under the repeated decisions of the courts, liability was waived. This conclusion would follow even if we were to presume that it was a duty of the appellee to supply them instead of its having been a mere custom. But we doubt the application of the rule requiring the master to furnish safe machinery and appliances. The gauntlets were no more than the shoes or other apparel of the servant; no more than the apron of the blacksmith.

We conclude that the circuit court did not err in sustaining the appellee's demurrer to the complaint, and the judgment is therefore affirmed.

Filed Sept. 18, 1894.