SMITH v. WILMINGTON AND WELDON RAILROAD CO.

(Filed October 29, 1901.)

MASTER AND SERVANT—*Assumption of Risk—Negligence—Personal Injuries.*

Where an employee engaged in work obviously dangerous is ordered by the employer to change the manner of performing the service to one which the employee knows to be more dangerous, the employee assumes the risk.

ACTION by Frank Smith against the Wilmington and Weldon Railroad Company, heard by Judge *W. A. Hoke* and a jury, at February Term, 1901, of the Superior Court of SAMPSON County.

Plaintiff alleges that on the 19th day of May, 1896, he was an employee of defendant company, engaged with a fellow-workman in cutting a brake-beam by blocking so that it might be bolted to the hangers attached to the saddle; that defendant company, through its representative, Nelms, suddenly commanded them to desist from their usual and ordinary manner of cutting said brake-beams, to-wit, by blocking, which was a safe and prudent method, and to proceed at once to perform the work in an entirely different manner, to-wit, by chipping, which plaintiff now knows was not only unnecessary —the one method being equally proper and correct as the other—but likewise unsafe and dangerous; and while so engaged, by the method of chipping, a chip flew off and seriously injured his right eye, on account of which he brings this action to recover damages for the injury sustained, pursuant to the negligent order given by Nelms.

Upon the close of the plaintiff's evidence, the defendant company moved to dismiss the action under the statute, which was refused, to which it excepted, and introduced its evidence, and at the close of which it renewed its motion, which was again refused.

Divers special instructions were prayed to be given, and exceptions taken to the refusal to give such as were refused. Verdict was rendered for the plaintiff, and the defendant appealed from the judgment.

*F. R. Cooper, J. D. & E. W. Kerr,* and *Geo. E. Butler,* for the plaintiff.

*Junius Davis,* and *H. L. Stevens,* for the defendant.

COOK, J.   The motion to dismiss made by defendant com-
pany in conformity to the rules of the statute ought to have
been allowed.   The evidence does not show any breach of
duty by the employer.   There is no suggestion of defects in the
tools employed, place of work, or danger in the performance
of the work known (or ought to have been known) to the
employer and not imparted to the employee—the only con-
tention being that the method was changed.

Plaintiff and Hardison, another employee, were engaged
in "blocking" a steel brake-beam, that is, "it was necessary
to cut it down from a width of three-quarters inch to a depth
of one-sixteenth inch to let a hanger come down and fit and
join on to a cylinder," from which, we understand, that an
incision was necessary to be made in the beam three-quarters
inch long and one-sixteenth inch deep to let in the hanger,
for it to fit in and join to the cylinder.   Plaintiff and his co-
worker were doing this work in the usual way by "blocking,"
that is, one would hold the chisel upon the beam and the
other would strike it straight down with a maul, thus driving
it into the beam.   After cutting down to the right depth—
making an incision at each end—the beam was turned over
and the piece was blocked out, and went down.   While so
working, defendant's representative, Nelms, ordered that the
beam be "chipped" instead of "blocked," saying that the
company had ordered these beams chipped out, and he wanted
them chipped.   It was claimed that blocking weakened the
beam.   In chipping, one held the chisel upon the place to
be cut, and the other struck upon the chisel with the maul,
forcing off gradually small pieces at a time, until the desired
width and depth were reached.   Under the mode of "block-
ing," the chips or small pieces went directly downward;
while under that of chipping, they would "fly off with tre-
mendous force, and you can't tell where they will strike or
which way they will go."

Plaintiff had been using the maul, but when they changed from blocking to chipping, Hardison relieved plaintiff by taking the maul, and let him hold the chisel. Plaintiff was holding the chisel at an angle, and at the third strike a chip flew off, struck the cuff (which projected from the beam close to the chipping) and bounded back and upwards, striking plaintiff in the eye, doing the injury complained of.

When Nelms ordered that the beams be chipped, Hardison replied: "I don't like to chip them out." He replied, "Well, you must chip them," and moved right off. Plaintiff said: "Hardison, what are you going to do?" He replied: "I don't like to chip them out; might be danger getting hurt." Plaintiff said: "Well, we must obey orders or leave." He said: "That's all facts." Plaintiff said: "Let's go to work and chip them out."

It does not appear clearly from plaintiff's evidence, as stated in the record, whether he had ever before done any chipping. In his direct examination, he says: "This was the first one he had ever done so; prior to that had always blocked them." In his cross-examination he said: "Had to handle castings, and sometimes, when rough, chipped some smooth. Chips fly in chipping castings; some danger in it. Chipped castings, off and on, all the time. * *.* The steel beams came into use after that." However, it is clear that he had not theretofore chipped any steel beams. Plaintiff also testified that he had no time to reflect or think about it when the order to chip was given. He was told to do it, and he did it; and if he had, it would have done no good. It was obey your orders or be discharged.

There was evidence showing that the chipping of castings was of frequent occurrence, and that chipping them was more dangerous than chipping steel; that castings were more brittle and would break up into more pieces; while steel was tougher and more likely to be in one piece at a time.

Defendant company claimed that "blocking" weakened the beam, and therefore wanted the incision made by chipping which, as it claimed, did not. In other words, it was *how* the work should be done, and not *what* should be done in doing it. The mode or system in the execution of work lies exclusively within the discretion and will of the master, over which the servant has no control; and the master is not liable to him for personal injuries received, although the master might have adopted a safer method. 3 Elliott on Railroads, sec. 1289.

Plaintiff, as it appears, was a man of intelligence and an experienced workman. For some considerable time he had been employed in the shops of defendant company, where the beams had been chipped as well as blocked; whether upon castings or steel it was not material, as the process was the same. The danger and hazard of both modes or systems were apparent to plaintiff, and when he changed the work from one to the other, he assumed all the ordinary hazards naturally incident to the work. In *Myers v. The W. C. D. Co.,* 138 Ind., 590, it is held that the fact that the service is a dangerous one adds nothing to the liability of the master for injuries resulting from the natural and ordinary incidents of the undertaking. The test is not the *danger* of the employment, but the neglect of the master in the duty which he owes the servant. When the service to be performed is attended with obvious dangers, there is no duty upon the master to warn the servant against it. And in *Turner v. Lumber Co.,* 119 N. C., 387, it is held that if a servant has equal knowledge with the master of the dangers incident to the work, and has sufficient discretion to appreciate the peril, his continuance in the employment is at his own risk.

Plaintiff contends that he did not have time to reflect— "Hadn't given thought to danger of chipping; had no time to reflect or think about it." He does not contend that he did

12——129

not know that the chipping mode was dangerous, and it does not seem to us that he brings himself within the rule of sudden risk, undertaken in response to an order which must be executed speedily without having time to take in the situation.

An order to do a dangerous act in the performance of a duty (as was the case in *Shadd v. Railroad,* 116 N. C., 968, and also in *Haltom v. Railroad,* 127 N. C., 255), is not involved in this case; it was an order to change the *system* of doing the work. In making this change, no emergency existed. Plaintiff could foresee the possibility of danger as well as the employer. It was obvious to him that the chips would have to escape, and, being an experienced man, must, indeed ought, to have known that violent blows by the maul would hurl them off with great force and in various directions. But the real cause of the injury was not by a chip flying *from* the chisel held by plaintiff, but by one which rebounded from the cuff, which was very near and projected from the beam. The possibility that a chip would strike the cuff and thence rebound and strike plaintiff's eye, depended upon numerous contingencies—the angle at which the chisel was held with reference to the cuff—the distance of plaintiff's eye from the cuff—the position of his head above the cuff with the relation to the position of the chisel upon the beam, whether squarely or diagonally across—the force of the blow by the maul and the shape of the chip which struck the cuff. It is hardly probable that a similar result under like circumstances could be accomplished again, even by design—certainly it was not done by either of the two licks first given.

From all the evidence in the case, we are unable to see any breach of duty due by defendant company to plaintiff. In accepting the employment in the shops, plaintiff assumed the ordinary risks and dangers incident to the work to be done on the beams, and being accidentally injured, the burden must be borne himself.

Error.