## MARKS v. COTTON MILLS.

(Filed May 16, 1905.)

*Negligence—Rule of Prudent Man—Change of Rules—Assumption of Risk—Contributory Negligence—Question for Jury.*

1. In all cases involving the question of negligence the standard by which to measure the conduct of the employer and the employee is the standard of conduct followed by the ideal prudent man.

2. When the facts are admitted and but one inference can be drawn from them, the court will find by the standard of the ideal prudent man, as a matter of law, the existence or non-existence of negligence. When the facts are not admitted, or when more than one inference may be reasonably drawn, the question is submitted to the jury to find whether or not there is negligence.

3. The fact that a mill ran short of hands is no legal excuse for changing a rule and requiring the machinery to be cleaned while in motion, if doing so unreasonably increased the hazard.

4. Where the defendant made a rule requiring the plaintiff to clean his machine while in motion, the question of defendant's negligence should have been submitted to the jury under proper instructions, to inquire whether it was a reasonably safe and prudent method of doing the work.

5. An employee who continues to work when he is exposed to a danger which he understands and appreciates, and which results from his employer's negligence and which he did not assume by his implied contract when he *entered* the service, does not as a matter of law voluntarily assume it by merely remaining in a place which is rendered unsafe by his employer's fault.

6. When an employer adopts a dangerous method, the question whether the employee assumes the risk by continuing the work depends upon whether said danger was so obvious and so well known to and appreciated by him or should by the exercise of reasonable care have been so known and appreciated that a prudent man under like conditions would have continued the service and this is for the jury to determine.

ACTION by W. H. Marks against Harriet Cotton Mills, heard by *Judge Henry R. Bryan* and a jury at the October Term, 1904, of the Superior Court of DURHAM County.

This is an action for the recovery of damages for personal injuries. The plaintiff testified that he was 24 years of age, was working for the defendant at Henderson, N. C., October, 1901, was a speeder hand, running an intermediate machine which had cog-wheels on it and was about 15 feet long and five feet high. There were 25 or 30 machines in the mill about 2 and ½ feet apart; he was injured in October, 1901; had to run it and get work off on it; cog gear on front and back; had worked the machine four or five months. When he first went there the rule was to stop at five o'clock to clean up. In about three months the defendant got behind and was running short of hands; he was ordered to clean up while running; the usual custom was to stop while cleaning; was hurt while running. The boss told the hands what to do and they had to obey; the second boss told him to clean the machine; he was carrying out the orders of the overseer; thought he could do it safely; was wiping off with waste; cog-wheels struck hand and cut off finger; set screw knocked hand; could not see set screw and did not know it was there—was not cautioned about it; order to clean

while in motion had not been on long; it was a new machine. "I was the first person to rope this machine, had cleaned it off a few times, could stop my machine without stopping other machines; took about 15 minutes to clean it; the set screw is about one-third as large as the cap on a buggy wheel, was a necessary part of the machine; three or four hundred set screws on machine. I run a speeder at Roanoke Mills; did not use lever to stop machine, because I would get a discharge if I did not obey orders; I had to get on my knees to clean it."

At the conclusion of the evidence defendant moved for a judgement of nonsuit. The motion was sustained and plaintiff appealed.

*Guthrie & Guthrie* for the plaintiff.
*Winston & Bryant* and *P. H. C. Cabell* for the defendant.

CONNOR, J., after stating the facts: When the plaintiff entered into the defendant's employment as a speeder hand, for three months thereafter it was the rule of the mill to stop at five o'clock and clean up. The defendant getting short of hands, the plaintiff with other employees was ordered to clean up while running. "The usual custom was to stop while cleaning." Without much knowledge of the construction and operation of the speeder, it would seem manifest that cleaning while standing still was absolutely safe, whereas doing so while the machine was in motion was more or less dangerous. The measure of duty imposed by law upon the master in respect to the use of machinery, is that, assuming the appliance to be free from defects, he shall furnish his employée a reasonably safe place in which to work and that the machine shall be operated in a reasonably safe manner. This may be regarded as elementary. It is not always easy to establish the standard by which to measure the conduct of the employer and employee. Judges and text writers

have endeavored to do so, it must be confessed, without marked success. The learned counsel in his well considered brief says: "Neither a court nor a jury can set up a standard of their own, and be allowed to say how a machine shall be operated, whether it shall be cleaned standing or in motion." We concur with counsel in the proposition that courts and juries are not to set up a standard of their own, but when we do so, but little progress has been made in solving the question, "Who shall set up the standard, and what shall it be?" Probably the employer and employee would not concur in fixing a standard. They differ radically in this case. Yet this is but one of many constantly coming up in this and other courts, demanding that a standard shall be set so that both parties may "live up to it." After long and anxious consideration, and much conflict of opinion, this court coming into harmony with many of the ablest courts of the Union, including the Supreme Court of the United States, adopted in all cases involving the question of negligence the standard of conduct followed by the ideal prudent man.

When the facts are admitted and but one inference can be drawn from them, the court will find, by this standard, as a matter of law, the existence or non-existence of negligence. When the facts are not admitted or when more than one inference may be reasonably drawn, the question is submitted to the jury to find whether or not there is negligence. *Russell v. Railroad,* 118 N. C., 1098; *Marks v. Cotton Mills,* 135 N. C., 287. This, we think, the safest and most workable rule.

While it is true, in the case before us, the facts are admitted by the motion to nonsuit, it is not clear that but one inference can be drawn from them. The rule for cleaning the machine while in motion certainly must have increased the hazard and subjected the employee to danger of injury. Why the change was made is only shown by the plaintiff's testimony that the mill ran "short of hands." This would

not be any legal excuse for making such change, if doing so unreasonably increased the hazard. There is no evidence as to the custom of mills in respect to the cleaning of machines, whether standing still or in motion. We find that in England certain persons are prohibited from cleaning a machine in motion impelled by mechanical power. In *Gideon v. Eqoree Co.*, 44 S. C., 442, it is stated that the testimony on the part of the plaintiff showed that the universal practice in other mills in that section of country was to have the machinery fanned while running, and not to stop it for that purpose, and there was no evidence tending to show that such a practice was dangerous. It is true that the evidence in this case is slight, consisting of the fact that the usual custom was to stop while cleaning. Whether this was because it was regarded as prudent to do so is not stated, but we think that it it not an unreasonable inference that such is the case.

We are of opinion upon the whole testimony that the question of the defendant's negligence should have been submitted to the jury under proper instructions, to inquire whether it was a reasonably safe and prudent method of doing the work. Of course it is open to both parties to introduce all competent and relative testimony to aid the jury in measuring the defendant's conduct by the standard fixed by the law.

The defendant however insists, admitting this to be true, the plaintiff is barred of a recovery because he assumed the risk. The defendant's counsel says that the plaintiff was an experienced hand, familiar with this machine and its operation, aided in putting it up and was the first man to "rope and work it," and had operated it for five months; that he made no complaint or objection, suggested no danger, but went back to the same machine and renewed his work. It is true that many cases hold that this conduct would bar the plaintiff's action upon the theory of his having assumed the risk incident to the mode of cleaning. This court in *Sims v. Lindsay*, 122 N. C., 678, however, said: "It is not to be

held as a matter of law that operatives must decline to work at machines which may be lacking in some of the improvements or safeguards they have seen upon other machines, under penalty of losing all claims for damages from defective machinery. It is the employer, not the employee, who should be fixed with knowledge of defective appliances and held liable for injuries resulting from their use. It is only where a machine is so grossly or clearly defective that the employee must know of the extra risk, that he can be deemed to have voluntarily and knowingly assumed the risk." In *Lloyd v. Hanes,* 126 N. C., 359, this court adopting the principle announced in *Smith v. Baker,* App. Cases L. R., 891, held that the employee was not required to surrender his employment by reason of a defect in the machine unless such defect was so obvious and the danger incident to the operation of the machine so manifest that a prudent man would not continue to operate it. In this case a mode of operation was entirely safe when the plaintiff took employment. If the defendant seeks to avoid the result of its negligence in changing its mode of operation by fixing the plaintiff with the assumption of the risk incident to the change, then it must go further than simply show a knowledge of the change and an appreciation of the danger, and also show that a reasonably prudent man would not, under like circumstances, have operated the machine; and this would be a question for the jury.

If, as is sometimes said, the employee's continuance in the employment after the discovery of the conditions resulting in the injury, is contributory negligence, the same principle would apply because, in order to constitute contributory negligence, the plaintiff must show a course of conduct inconsistent with that of an ideal prudent man under like circumstances. *Hicks v. M'f'g. Co.,* at this term.

The duty of the employee, when a change in conditions respecting his safety arises after the contract of employ-

ment, has undergone much discussion in the courts during the past twenty years. The doctrine has to some extent been modified as industrial conditions have changed. In *Mahoney v. Dore,* 155 Mass., 513 (30 N. E. Rep. 356), *Knolton, J.,* said: "In a very recent case in England (*Smith v. Baker,* App. Cases 325) it has been held by the House of Lords that a servant who continues to work when he is exposed to a danger which he understands and appreciates, and which results from his employer's negligence, and which he did not assume by his implied contract when he entered the service, does not as a matter of law voluntarily assume it by merely remaining in a place which is rendered unsafe by his master's fault. We are not aware of any adjudications in this commonwealth which are necessarily inconsistent with this just and reasonable doctrine although different opinions have been expressed on this point by eminent judges both here and in England. Most of the cases in this State, which relate to a servant's assumption of a risk, refer to risks assumed on entering the service. * * * The tendency of recent decisions is to hold that in regard to dangers growing out of the master's negligence, which are not covered by the implied contract between the master and servant when the service was undertaken, it is a question of fact whether a servant, appreciating the risk, assumes it voluntarily or endures it because he feels constrained to."

Mr. Labatt is of the opinion that in later cases the Massachusetts court repudiated the English rule. Labatt on Master & Servant, 376. However this may be, and without undertaking to reconcile the numerous cases in other jurisdictions, this court in *Lloyd v. Hanes; Sims v. Lindsay,* and *Hicks v. M'f'g. Co., supra,* has adopted and followed the rule laid down in *Smith v. Baker,* certainly so far as it applies to the facts in this case.

The question whether the plaintiff assumed the risk or, as it may be stated, was guilty of contributory negligence, was

peculiarly for the decision of the jury. In the decision of it, they are entitled to have all of the testimony throwing light upon the inquiry whether the danger was so obvious and the risk so imminent and so well known and appreciated by the plaintiff, or should by the exercise of reasonable care have been known and appreciated, that a prudent man under like conditions would have continued the service. This rule applies to the employer and employee alike and is fair to both.

The case of *Smith v. Railroad,* 129 N. C., 173, is pressed upon our attention. It must be conceded that language is used by the court in that case not easily reconcilable with that used in the other cases cited herein. The court was of the opinion that upon the plaintiff's evidence the danger involved in the method of doing the work was so obvious and admittedly known and appreciated before the work from which the injury resulted was undertaken as to bar his action. We do not reach the same conclusion upon the facts in this case. In *Ausley's case,* 130 N. C., 34, there was no change in the method of operating the machine after employment. In *Turner v. Lumber Co.,* 119 N. C., 387, it is true that Mr. *Justice Avery* lays down the general proposition cited in the defendant's brief. The plaintiff in that case recovered and the judgment was affirmed. There was no question of a change in the method of working after the contract of employment. The principle announced there has been modified by the later cases cited.

When this case was before us upon the former appeal (135 N. C., 287), the question now considered was not presented. It was there claimed that the danger to the employee was increased because the cog-wheels were not boxed. A new trial was awarded because of the admission of incompetent testimony.

To prevent misconception, we desire to say that our decision in this case, based upon the admitted facts, is simply that the allegation of negligence in ordering the machine to

MARKS *v.* COTTON MILLS.

·be cleaned while in motion should be submitted to the jury; that if they find the issue for the plaintiff, the question of assumption of risk or contributory negligence, alleged to arise out of his remaining in the service, should also be submitted to the jury.

We have noted the many cases cited in the defendant's well considered brief. Most of them arose out of injuries sustained while operating the machine. We find no evidence in this record of any defect in the construction or condition of the machine; nor do we think the size, condition, etc., of the set screws indicate any defect. If the plaintiff had, upon his testimony, been injured while operating the speeder, we should be unable to find any evidence of negligence. The two questions are:

1. Whether the change in the manner and time of cleaning unreasonably enhanced the danger and risk, or whether thereby the defendant failed in its duty "to take care that ordinary risks and perils of the employment are not increased by any omission on its part to provide for the safety of its employees," and whether such omission was the proximate cause of the injury. *Marks v. Cotton Mills, supra.*

2. Whether, if the method adopted was dangerous, such danger was so obvious and so well known to, and appreciated by the plaintiff, or by the exercise of reasonable care should have been so known and appreciated that a reasonably prudent man, under like conditions, would have continued in the employment.

The legal rights and liabilities of the parties will depend upon the facts as found by the jury upon these controverted questions. There must be a

New Trial.