MAUDE MEHAFFEY, Administratrix, v. APPALACHIAN
CONSTRUCTION COMPANY.

(Filed 3 April, 1929.)

**Master and Servant C b—Employer liable for failure to furnish reasonably safe transportation when he assumes this service—Independent contractors.**

> An employer of labor who assumes to transport his employees to and from work is held in the exercise of ordinary care to do so with reasonable safety, and is liable in damages to one of them injured by the negligent acts of an agent or authorized representative he has selected for that purpose when such injury is thereby proximately caused, irrespective of whether the agency thus selected and acting is an independent or subcontractor, or has contracted to do so for compensation or otherwise.

CIVIL ACTION, before *Deal, J.,* at February Term, 1928, of HAYWOOD.

The evidence tended to show that Kenneth Mehaffey, a boy about fourteen years of age, was employed by the defendant to sprinkle concrete in Hazelwood, with the understanding that he was not to be moved to any point outside thereof. The work in Hazelwood was finished about dinner time on 26 May. The defendant had a contract for the construction of a highway and was working upon highway No. 10 at Balsam, a distance of from four to eight miles from Hazelwood. On the afternoon of 26 May the mixer foreman of the defendant directed one Leatherwood, a truck driver for the defendant, to take Kenneth Mehaffey to Balsam in order to sprinkle concrete at that point. That afternoon at quitting time Stevenson, who was superintendent or foreman in charge of the work, remarked in the presence of plaintiff's intestate and other employees that Leatherwood should wait and take the finishers in and that the other employees could "catch Justice's other cement trucks." Kenneth Mehaffey, together with some other employees, climbed on Justice's truck and started to Hazelwood where he lived. The truck of Justice was running close behind another cement truck operated by a man named Freeman. Freeman intended to turn into a side road on his left and "pulled to the right to make his swing around into the road, and Mr. Justice went to come around Mr. Freeman on the left-hand side of the road, and when Mr. Freeman came across the road to the left Mr. Justice threw his truck back to the right and that threw the little boy off into the center of the highway. . . . The little boy was standing up with his back against the cab with his hand on the side. . . . When he made a quick turn to the right the truck went off on the other side of the road. . . . The little boy fell off on the left-hand side of the road, in the center. Before Mr. Freeman

went to make his turn into the road to the left he threw out his sign—
threw his hand up that way—  . . .  put his hand out on the right-
hand side of the truck."

Kenneth Mehaffey was picked up and hurried to the hospital, but
died on the way.

There was evidence tending to show that after the road force was
moved to Balsam that employees of defendant frequently rode on the
cement truck of Justice morning and night to and from Hazelwood and
Balsam; and further, that Mr. Stevenson had said he would furnish
transportation for what men could ride on the company's trucks, but
ordinarily they were out of commission and could not carry the men,
and he said, "You can go on the cement trucks." The evidence further
tended to show that Mr. Stevenson had requested Mr. Justice to haul
the men backward and forth. He just told him "the company's trucks
could not haul all the men, and he wanted to transport men back and
forth from Hazelwood to the works. Mr. Justice told him he would."
Justice and Freeman were employed by the Lee Transportation Com-
pany to run trucks and haul sand and gravel to the works. The Lee
Transportation Company was an independent contractor and had no
relationship with the defendant except to carry out the terms of its sub-
contract in furnishing certain material for the work. There is no evi-
dence that the defendant paid Justice or Freeman for any services con-
nected with the transportation of employees.

The evidence for the defendant was strong and contradicted the evi-
dence offered by the plaintiff.

The issues and answers of the jury thereto were as follows:

1. Did the defendant contract with the father of the deceased to work
deceased only in the town of Hazelwood, and not on highway No. 10,
outside of Hazelwood, as alleged in the complaint? Answer: Yes.

2. Did the defendant contract or undertake, expressly or by implica-
tion, to transport plaintiff's intestate to and from his work outside of
the town of Hazelwood? Answer: Yes.

3. Was Decatur Justice in the employ of the defendant at the time of
the injury and death of plaintiff's intestate? Answer: Yes.

4. Was Tom Freeman in the employ of the defendant at the time of
the injury and death of plaintiff's intestate? Answer: Yes.

5. Was the plaintiff's intestate injured and killed by the negligence
of the defendant, Appalachian Construction Company, as alleged in the
complaint? Answer: Yes.

6. Did the plaintiff's intestate, by his own negligence, contribute to
his injury and death, as alleged in the answer? Answer: No.

7. What damage, if any, is the plaintiff entitled to recover? Answer:
$7,000.

From judgment upon the verdict the defendant appealed.

*Morgan & Ward and Alley & Alley for plaintiff.*
*A. Hall Johnston for defendant.*

BROGDEN, J. What duty is imposed by law upon an employer who undertakes to transport workmen?

This case was considered by the Court upon a former appeal, and is reported in 194 N. C., 717, 140 S. E., 716. A new trial was awarded upon the ground that the jury had not been properly instructed upon the question as to whether the defendant contracted to provide transportation for the deceased or whether he was riding upon the truck at the invitation or by the license of the owner or the driver.

It is to be observed that the issues in the case at bar are much more comprehensive than those appearing in the former opinion.

Certain principles relating to the question of law involved, have been discussed and enunciated by this Court. In *Haynie v. Power Co.,* 157 N. C., 503, 76 S. E., 198, the Court declared: "We do not mean to hold that the defendants became insurers of the intestate's life, but if the agreement be as testified to by plaintiff, it was the duty of defendants to use due diligence and care to keep him away from the machinery and at the work he was hired to perform or else to return him to his father." *Ensley v. Lumber Co.,* 165 N. C., 687, 81 S. E., 1010; *Satchell v. McNair,* 189 N. C., 472, 127 S. E., 417.

Again, in *Tanner v. Lumber Co.,* 140 N. C., 475, 53 S. E., 287, the Court said: "The rigorous rule that once obtained has been greatly modified. The true rule now is more humane and holds the master is liable for negligence in respect to such acts and duties as he is required, or assumed to perform, without regard to the rank or title of the agent entrusted with their performance. As to such acts the agent occupies the place of the master and he is liable for the manner in which they are performed." To the same effect is *Williams v. R. R.,* 190 N. C., 366, 129 S. E., 816, in which the principle of law applicable is thus expressed: "Where the master undertakes to furnish his laborers transportation to and from their work, it is his duty, in the exercise of ordinary care, to see to it that such transportation is rendered as reasonably safe as the character of it will permit."

The clear meaning of these decisions is that an employer of labor, who either contracts to furnish transportation or assumes the task and responsibility of so doing, is required by law to exercise ordinary care in discharging such obligation, and is therefore liable for the negligence of the person who undertakes for him and by his direction to transport employees. This is true whether the person actually transporting workmen be called servant, agent or independent contractor.

The jury has found from proper evidence that the defendant had assumed the obligation of transporting workmen from Balsam to Hazelwood, and that Justice was the person employed by the defendant for returning Kenneth M'ehaffey and others to their homes; and further, that the death of plaintiff's intestate was proximately caused by the negligence of the defendant.

There is some contention that there is no evidence that Freeman was employed by the defendant to transport laborers, but the recovery can be sustained irrespective of either the employment or negligence of Freeman, because there is positive evidence that the truck driven by Justice was especially selected by Stevenson, superintendent of the defendant, for returning plaintiff's intestate to his home. Moreover, there is sufficient evidence of the negligence of Justice. A close scrutiny of the record discloses no error of law warranting a new trial, and the judgment is affirmed.

No error.